On certified questions from the United States Court of Appeals for the Federal Circuit; certification order dated July 16, 2008; considered and under advisement January 6, certified questions accepted January 29, 2009

KLAMATH IRRIGATION DISTRICT,
Tulelake Irrigation District,
Klamath Drainage District,
Poe Valley Improvement District,
Sunnyside Irrigation District,
Klamath Basin Improvement District,
Klamath Hills District Improvement Co.,
Midland District Improvement Co.,
Malin Irrigation District,
Enterprise Irrigation District,
Pine Grove Irrigation District,
Westside Improvement District No. 4,
Shasta View Irrigation District,
Van Brimmer Ditch Co.,
Fred A. Robison, Albert J. Robison,
Lonny E. Baley, Mark R. Trotman,
Baley Trotman Farms,
James L. Moore, Cheryl L. Moore,
Daniel G. Chin, Deloris D. Chin,
Wong Potatoes, Inc.,
Michael J. Byrne, Daniel W. Byrne,
and Byrne Brothers,
*Plaintiffs,*

*v.*

UNITED STATES OF AMERICA
and Pacific Coast Federation of Fishermen's Associations,
*Defendants.*

(Federal CC No. 2007-5115; SC S056275)

202202 P1593d 159

Michael H. Simon, of Perkins Coie LLP, Portland, filed the response for plaintiffs Klamath Irrigation District, Tulelake Irrigation District, Klamath Drainage District, Poe Valley Improvement District, Sunnyside Irrigation District, Klamath Basin Improvement District, Klamath Hills District Improvement Co., Midland District Improvement Co., Malin Irrigation District, Enterprise Irrigation District, Pine Grove Irrigation District, Westside Improvement District No. 4, Shasta View Irrigation District, Van Brimmer Ditch Co., Fred A. Robison, Albert J. Robison, Lonny E. Baley, Mark R. Trotman, Baley Trotman Farms, James L. Moore, Cheryl L. Moore, Daniel G. Chin, Deloris D. Chin, Wong Potatoes, Inc., Michael J. Byrne, Daniel W. Byrne, and Byrne Brothers to the memoranda of *amicus curiae* Oregon Water Resources Department, and defendants the United States and Pacific Coast Federation of Fishermen's Associations.

Stephanie M. Parent, Portland, filed the memorandum of law for defendant Pacific Coast Federation of Fishermen's Associations and *amici curiae* Institute for Fisheries Resources, the Wilderness Society, Klamath Forest Alliance,

Oregon Wild, WaterWatch of Oregon, Northcoast Environmental Center, Sierra Club, and Natural Resources Defense Council.

Suzanne Bratis, Assistant U. S. Attorney, filed the response of defendant the United States to the memorandum of law of *amicus curiae* Oregon Water Resources Department.

Denise G. Fjordbeck, Attorney-in-Charge, Salem, filed the memorandum of law for *amicus curiae* Oregon Water Resources Department. With her on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

PER CURIAM

## PER CURIAM

The United States Court of Appeals for the Federal Circuit has certified three state law questions to this court. The parties in the underlying federal litigation and the Oregon Water Resources Department, appearing as an *amicus curiae* in this court, have filed extensive memoranda variously opposing and supporting this court's acceptance of those questions. *See* ORS 28.200 (authorizing Supreme Court to accept certified questions under certain conditions); *Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 364-71, 811 P2d 627 (1991) (explaining bases for accepting or declining to accept certified questions). After considering the parties' arguments, we conclude that it is appropriate to accept the certified questions.

Before turning to the parties' arguments, we first put the three questions that the Federal Circuit has asked in context. The Federal Bureau of Reclamation (the Bureau) manages the Klamath Project, which stores and supplies water to farmers, irrigation districts, and federal wildlife refuges in the Klamath River basin.[1] The plaintiffs in the underlying federal litigation are farmers and irrigation districts that use water from the Klamath Project for irrigation and other agricultural purposes. As a result of drought conditions in 2001, the Bureau terminated the delivery of water to plaintiffs in order to make water available for three species of endangered fish.[2]

Claiming a property right in the water, plaintiffs brought an action in the Court of Federal Claims alleging that the United States had unconstitutionally taken their property. Relying on an Oregon statute, the Court of Federal Claims ruled that plaintiffs had no equitable right in the water that they used to irrigate their land. *See Klamath Irrigation District v. United States* (*Klamath I*), 67 Fed Cl 504, 526-27 (2005) (holding that, under a 1905 Oregon law, the United States "obtained rights to the unappropriated water of the Klamath Basin"). It followed, the Court of

---

[1] We take the facts from the parties' statement of agreed facts.

[2] The Bureau was able to make some water (approximately 70,000 acre feet) available in July 2001.

Federal Claims concluded, that plaintiffs' takings claim based on the existence of an equitable interest in the water necessarily failed. *See id.* at 540 (so concluding).[3]

Plaintiffs appealed to the Federal Circuit. As the parties framed the issues in the Federal Circuit, the primary issue arose out of an intersection of federal and state law. We begin by briefly describing the federal statute, which provides the context for the state law issue. Congress passed the Reclamation Act of 1902 to provide for the "construction and maintenance of irrigation works * * * for the reclamation of arid and semiarid lands" in the western states and territories. Reclamation Act of 1902, ch 1093, § 1, 32 Stat 388. The Act contemplates that, subject to certain conditions, the Secretary of the Interior will make public lands, irrigated pursuant to the Act, available to settlers and also will make water from the irrigation projects available for privately held land. *Id.* §§ 3-4, 32 Stat 389. Section 8 of the Act provides that the Act does not affect state laws "relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws." *Id.* § 8, 32 Stat 390. Section 8 then adds the following proviso: "[T]he right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right." *Id.*

In their briefs to the Federal Circuit, both plaintiffs and the United States explained that section 8 posed a problem for the Secretary in implementing the Act. In most western states, a person may not appropriate water without first putting it to beneficial use. However, the size of many of the federal reclamation projects and the amount of time required

---

[3] The Court of Federal Claims concluded that plaintiffs' interests in the water were either contractual or, to the extent that some plaintiffs acquired water rights as a result of patents issued by the United States or permits issued by Oregon, those rights were junior to the rights that the United States and certain tribes held. *Klamath I*, 67 Fed Cl at 531-40. The court granted summary judgment for the United States on plaintiffs' claim that they had a property interest in the water, which the Government took. In a later order, the court focused on plaintiffs' contractual rights to receive water and held that the sovereign acts doctrine was a defense to plaintiffs' breach of contract claim. *Klamath Irrigation District v. United States* (*Klamath II*), 75 Fed Cl 677, 695 (2007).

to construct those projects prevented the water that those projects were supposed to deliver from being put to beneficial use for many years. The Secretary thus ran the risk that other users would appropriate the water before the Secretary completed the irrigation projects.

The Oregon legislature responded to that problem in 1905. It enacted a law that provides, in part, that, when an officer of the United States, "authorized by law to construct works for the utilization of water within this State," files with the state engineer "a written notice that the United States intends to utilize certain [unappropriated] waters," those waters "shall not be subject to further appropriation under the laws of this State, but shall be deemed to have been appropriated by the United States," provided certain conditions are met. Or Laws 1905, ch 228, § 2. The 1905 Act then added,

> "No adverse claims to the use of the water required in connection with such plans shall be acquired under the laws of this State except as for such amount of said waters described in said notice as may be formally released in writing by an officer of the United States thereunto duly authorized."

In 1905, an official with the United States Geological Survey posted a notice claiming "all the unappropriated waters of the Klamath River * * * to be used for irrigation, domestic, power, mechanical, and other beneficial uses" and stating that the waters "hereby appropriated [are] to be stored by means of a dam located * * * across the Klamath River." Later that year, the Bureau of Reclamation filed a notice with the state engineer stating that " 'the United States intends to utilize * * * [a]ll of the waters of the Klamath Basin in Oregon * * *' for purposes of 'the operation of works for the utilization of water * * * under the provisions of the * * * Reclamation Act.' " The Bureau later filed plans for the proposed works and proof of authorization of the Klamath Project.

With that statutory background in mind, we turn to the arguments that plaintiffs and the United States raised in the Federal Circuit.[4] In their opening brief, plaintiffs

---

[4] We summarize the parties' arguments only to put the Federal Circuit's questions in context. We express no opinion on the merits of those arguments.

assumed that the United States acquired rights to water for use in the Klamath Project when it filed notices with the state in 1905 in compliance with state law. Plaintiffs argued, however, that whatever rights the United States acquired in the water from the Klamath River as a result of its compliance with the 1905 state law, the United States did not hold the exclusive right to use the water. Rather, relying on three United States Supreme Court cases, plaintiffs contended that the farmers and irrigators to whom the United States delivered the water obtained, at a minimum, an equitable interest in the water when they put it to beneficial use. *See Nevada v. United States*, 463 US 110, 126, 103 S Ct 2906, 77 L Ed 2d 509 (1983) (explaining that "the beneficial interest in the [water] rights confirmed to the Government resided in the owners of the land within the [reclamation] Project to which these waters became appurtenant upon the application of Project water to the land"); *Nebraska v. Wyoming*, 325 US 589, 613-14, 65 S Ct 1332, 89 L Ed 1815 (1945) (discussing the United States' and landowners' respective rights to use water from reclamation projects); *Ickes v. Fox*, 300 US 82, 94-96, 57 S Ct 412, 81 L Ed 525 (1937) (same).

Plaintiffs also addressed a state law defense that the United States had asserted (and that the Court of Federal Claims had accepted) to their claimed equitable interest. Plaintiffs noted that the Court of Federal Claims had interpreted the 1905 Oregon statute as barring their claimed interest, but they contended that the federal court had read that statute too broadly. In their view, the 1905 Oregon statute did not preclude persons who received water from a Reclamation Act project from obtaining a property interest in the water.[5]

In its answering brief, the United States argued that state law provided a complete answer to plaintiffs' claimed property right. It emphasized that, under section 8 of the Reclamation Act, state law controls the question of how water for federal irrigation projects will be appropriated and

---

[5] Plaintiffs also argued, in their reply brief, that to the extent Oregon law differed, the proviso to section 8 of the Reclamation Act conflicted with that law and controlled. The United States, in its answering brief, anticipated that argument and asserted that the proviso was narrower than plaintiffs contended.

who holds the water right. The United States did not dispute that the three cases on which plaintiffs relied recognized that the landowners who had used water from federal reclamation projects had acquired a property interest in it. The United States argued, however, that those cases did not announce a general rule of law applicable to all western states. In the government's view, each of those cases turned on and was limited to the specific facts and state laws at issue in those cases.

The United States then turned to Oregon's 1905 law. It contended that, under that law, it had acquired the right to all unappropriated waters in the Klamath River when it filed its notice of intent with the state engineer and later met the other requirements of that law. The United States further argued that, under the 1905 Oregon law, the United States' formal written release was necessary before plaintiffs could acquire any interest, equitable or otherwise, in the water rights it had acquired. It followed, the United States concluded, that without a written release of the water rights it held, plaintiffs had no equitable interest in the water.

■■ Given that debate, the Federal Circuit certified the following three questions to this court:

"1. Assuming that Klamath Basin water for the Klamath Reclamation Project 'may be deemed to have been appropriated by the United States' pursuant to Oregon General Laws, Chapter 228, § 2 (1905), does that statute preclude irrigation districts and landowners from acquiring a beneficial or equitable property interest in the water right acquired by the United States?

"2. In light of the statute, do the landowners who receive water from the Klamath Basin Reclamation Project and put the water to beneficial use have a beneficial or equitable property interest appurtenant to their land in the water right acquired by the United States, and do the irrigation districts that receive water from the Klamath Basin Reclamation Project have a beneficial or equitable interest in the water right acquired by the United States?

"3. With respect to surface water rights where appropriation was initiated under Oregon law prior to February 24, 1909, and where such rights are not within any previously adjudicated area of the Klamath Basin, does Oregon State

law recognize any property interest, whether legal or equitable, in the use of the Klamath Basin water that is not subject to adjudication in the Klamath Basin Adjudication?"

*Klamath Irrigation Dist. v. United States (Klamath III)*, 532 F3d 1376, 1377-78 (Fed Cir 2008).

As we understand the first two certified questions, they go to the state law defense that the United States raised in its answering brief. The first question seeks to determine whether, assuming that the United States appropriated water rights for the Klamath Project pursuant to the 1905 Oregon statute, that statute precludes other persons from obtaining a beneficial or equitable interest in those rights. The second question depends on the answer to the first. That is, assuming that the United States appropriated water pursuant to the 1905 statute and assuming that the 1905 statute is not an absolute bar to obtaining an equitable interest in those water rights, the next question is whether, under Oregon law, beneficial use by the person who receives the water from the Klamath Project is sufficient to give that person a beneficial or equitable interest in the water. The third question addresses a different issue that arises because of an ongoing, separate state adjudication of the rights to the surface water in the Klamath River basin. As we understand that question, it asks whether, under Oregon law, anyone may assert either a legal or an equitable property interest in water from the Klamath Project without first having gone through the pending state water rights adjudication.

All three questions present issues of state law that are both preliminary to and potentially dispositive of plaintiffs' federal takings claim. If, for instance, the United States is correct that the 1905 Act precludes plaintiffs from obtaining an equitable interest in any water right that the United States acquired under that statute, then that could resolve plaintiffs' takings claim, at least as plaintiffs reportedly have litigated that claim in federal court. Similarly, whether beneficial use by the landowners is sufficient to create an equitable interest under state law is also potentially dispositive. Finally, if the equitable interest that plaintiffs assert in the water right may or must be litigated in the pending state

water rights adjudication and if, as the United States argues, plaintiffs disclaimed reliance in the federal litigation on any water right that will be determined in the pending state water rights adjudication, then our answer to the third question also may dispose of plaintiffs' federal takings claim.

At first blush, it appears that the certified questions satisfy the five statutory factors discussed in *Western Helicopter Services*; that is, an appropriate federal court has certified the questions, the questions presented are legal, the questions present issues of Oregon law, the answers to those questions could resolve the federal claim, and the certifying court has concluded that there is no controlling Oregon precedent. *See* ORS 28.200; *Western Helicopter Services*, 311 Or at 364-65 (listing those factors). That conclusion is not without objection, however. The Oregon Water Resources Department (the state) has appeared as an *amicus* in this court and raised objections to accepting the certified questions. The United States and the Pacific Coast Federation of Fishermen's Associations, which intervened as a defendant in the federal action, have filed memoranda in this court agreeing in part with the state. Plaintiffs, for their part, respond that the state and the opposing parties in the federal action are attempting to relitigate issues that the Federal Circuit already has decided against them.

As we understand the state's and the parties' memoranda, they raise essentially three issues. First, the state and others argue that, because of the litigation strategy that plaintiffs adopted in the Court of Federal Claims, the issues raised by the Federal Circuit's three questions are not properly before that court and any answers that we might give to those questions are irrelevant to the takings claim that plaintiffs are pursuing in federal court. We doubt, however, that the Federal Circuit would have certified the three questions to us if it had not concluded that the state law issues they raise are properly before it. Indeed, Judge Gajarsa dissented from the Federal Circuit's decision to certify those questions for the very reason that the state now advances. *Klamath III*, 532 F3d at 13778 (Gajarsa, J., dissenting). The majority, however, certified the questions over the dissenting judge's objection.

We are hesitant to second-guess the Federal Circuit majority's apparent conclusion that the state law issues it certified to us are properly before it. Beyond that, we question the premise of the state's argument. The United States has asserted that the 1905 Oregon statute provides a complete defense to plaintiffs' claimed property interest. The Federal Circuit reasonably could conclude that plaintiffs' reported litigation strategy did not preclude either the United States from relying on state law as a defense or the Federal Circuit from addressing that defense. Moreover, the United States has argued that plaintiffs' reported litigation strategy makes the third certified question material, a proposition with which we agree.[6] In short, even if we thought that we had the authority to second-guess the Federal Circuit's determination of which issues are and are not properly before it, we see no reason to exercise that authority here.

The state also argues that the parties have not been able to agree on all the facts; it notes that the parties have disagreed regarding one paragraph, paragraph 23, in the statement of facts that the parties submitted. That paragraph addresses plaintiffs' litigation strategy and the resulting limitation that the Court of Federal Claims order places on plaintiffs. In certifying the three questions to us, the Federal Circuit noted the parties' disagreement on that point but expressed its conclusion that their disagreement would not preclude us from accepting certification.

Although the Federal Circuit did not explain the basis for its conclusion, it presumably concluded that plaintiffs' litigation strategy did not bar it from considering the state law issues that the United States had raised as a defense (and on which the Court of Federal Claims had relied) to plaintiffs' federal takings claim. As noted above, we think that the question of which issues are properly before the Federal Circuit is a procedural issue for that court; it is

---

[6] If, as the United States argues, plaintiffs have disclaimed reliance in the federal action on any property interest that may be adjudicated in the pending state water rights adjudication, then the answer to the third question could provide an alternative basis for resolving plaintiffs' federal action.

not a disputed fact that would preclude us from accepting the certified questions.

Finally, the state notes that the parties to the federal proceeding, as well as other parties who are not before that court, have invested a substantial amount of time and effort in the pending state water rights adjudication. The state water rights adjudication has been ongoing since 1975 and, when completed, will provide a comprehensive determination of the right to use the surface water in the Klamath River basin. *See United States v. Oregon*, 44 F3d 758 (9th Cir 1994) (describing Klamath Basin adjudication). The state draws two conclusions from the existence of the pending state water rights adjudication. First, the state and others suggest that we should not decide the questions that the Federal Circuit has asked us until those questions are presented in the context of the state water rights adjudication. Second, the state notes that, if we decide the questions that the Federal Circuit has asked, the United States may withdraw from participating in the pending state water rights adjudication on the ground that the adjudication is no longer comprehensive. *See id.* at 770 (holding that the Klamath Basin adjudication was the sort of comprehensive proceeding to which Congress had waived the United States' sovereign immunity).[7]

We have no wish to interfere with or unnecessarily anticipate the issues raised in the pending state water rights adjudication. As we understand the import of the Federal Circuit's certification order, however, the Federal Circuit has determined that those state law questions are material to plaintiffs' federal takings claims. The certification order also implies that, if we do not accept certification, the Federal Circuit will go ahead and decide those state law issues in the

---

[7] In *United States v. Oregon*, the Ninth Circuit rejected the United States' argument that a prior determination of some individual water rights in the Klamath Basin through the permit process meant that the pending Klamath Basin adjudication was not comprehensive within the meaning of the McCarran Amendment. 44 F3d at 767-68. Given that holding, we do not give great weight to the concern that the United States may withdraw from the pending state water rights adjudication; that is, in light of the Ninth Circuit's holding, it is difficult to see how any issues of state water rights law that we may decide in answering the Federal Circuit's questions would render the state water rights adjudication not comprehensive.

course of resolving plaintiffs' federal takings claim. It follows that the issue posed by the certification order is not whether those state law issues should be decided; rather, the issue is which court (this court or the Federal Circuit) should decide them. The state's and others' concerns, as we understand them, go to the federal court's refusal to stay its proceedings pending the completion of the state water rights adjudication. Whatever the merits of that decision, the decision whether to stay the federal proceedings is a matter for the federal courts; it provides no basis for this court to decline to accept the certified questions.

Having considered the parties' arguments, we conclude that it is appropriate to accept the certified questions. Some of the parties have asked us, if we accept the certified questions, either to rephrase them or to answer them in a particular order. The state asks us to rephrase the first and second questions to make clear that we are not deciding whether the United States acquired any interest in the water by complying with the 1905 Oregon law. The United States, for its part, asserts that the first two questions assume that proposition; they do not ask us to decide it. The United States also asks us, if we accept certification, to answer the third question first because that question would be dispositive.

At this stage of the proceeding, we decline to rephrase the questions or declare the order in which we will decide them. Although the parties have filed extensive memoranda regarding whether we should accept the certified questions, they have not yet filed briefs in this court addressing the merits of the state law issues that the Federal Circuit's questions raise. We are hesitant to limit or rephrase the questions without having had the benefit of the parties' briefing on the merits. We think that the questions are sufficiently open-ended and our procedures sufficiently flexible that we can accommodate the parties' concerns, if they turn out to be justified, in the course of answering the questions on the merits. We also note a proposition that perhaps is so obvious it needs no mention. This court always retains the discretion to decline to provide an answer to a certified question, limit our answer to a question, or rephrase a question if it turns out, after full briefing, that it is appropriate to do so.

*See Western Helicopter Services*, 311 Or at 366-71 (recognizing court's discretion).

The certified questions are accepted.