WALLACH, Circuit Judge,
dissenting.
The instant appeal is about the sovereign acts doctrine.[1] It hinges entirely on whether that doctrine, an affirmative defense, shields the U.S. Army Corps of Engineers, the U.S. Air Force, and the Secretary of the U.S. Department of the Army (collectively, “the Government”) from liability for preventing James Talcott Construction, Inc.’s (“JTC”) employees from accessing the Malmstrom Air Force Base (“Malmstrom”) in Montana.[2] Nonetheless, the majority never applies the sovereign acts doctrine to the analysis of the case.
“Ordinarily, it is incumbent on the defendant to plead and prove [an affirmative] defense.... ” Taylor v. Sturgell, 553 U.S. *947 880, 907, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (citation omitted). Our precedent is clear that “[t]he [sovereign acts] doctrine is an affirmative defense that is an inherent part of every government contract.” Conner Bros. Constr. Co. v. Geren, 550 F.3d 1368, 1371 (Fed. Cir. 2008) (citation omitted). The Armed Services Board of Contract Appeals (“ASBCA”) found that the Government met its burden of proving entitlement to this affirmative defense, see Garco Constr., Inc. (Garco III), ASBCA Nos. 57796, 57888, 16-1 BCA ¶ 36,278 (J.A. 31-34); Garco Constr., Inc. (Garco II), ASBCA Nos. 57796, 57888, 15-1 BCA ¶ 36,135 (J.A. 4-28); Garco Constr., Inc. (Garco I), ASBCA Nos. 57796, 57888, 14-1 BCA ¶ 35,512 (J.A. 37-48), and the majority bypasses this determination under the guise of waiver in affirming the ASBCA, see Maj. Op. 942 n.2. However, because the sovereign acts doctrine is grounded in the Government’s sovereign immunity, see supra n.l, I believe that finding waiver is inappropriate, see Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (“Sovereign immunity is jurisdictional in nature. Indeed, the terms of the [Government’s] consent to be sued in any court define that court’s jurisdiction to entertain suit.” (internal quotation marks and citations omitted)); City of Gainesville v. Brown-Crummer Inv. Co., 277 U.S. 54, 59, 48 S.Ct. 454, 72 L.Ed. 781 (1928) (“Of course a question of jurisdiction cannot be waived. Jurisdiction should affirmatively appear, and the question may be raised at any time.” (citations omitted)).
The majority’s conclusion suffers from two additional flaws. First, although the ASBCA correctly treated the sovereign acts doctrine as an absolute bar to finding the Government liable, see, e.g., J.A. 28, 33, 47, it failed to consider whether the Government satisfied the second factor in the two-factor test for applying the doctrine. The majority compounds that error by ignoring the application of the doctrine altogether. Second, even though the ASBCA’s conclusion that the sovereign acts doctrine applied would preclude a merits analysis and liability determination, the majority misinterprets the ASBCA’s opinions below and incorrectly considers the merits. For these reasons, I respectfully dissent.
I. The Sovereign Acts Doctrine
I begin by articulating the. two-factor framework we apply to determine whether the Government is entitled to the affirmative defense of the sovereign acts doctrine. After articulating this framework, I turn to the ASBCA’s analysis.
A. Legal Framework
The U.S. Supreme Court has not established the precise contours of the sovereign acts doctrine. Indeed, the Supreme Court has applied the sovereign acts doctrine in only two cases, the second of which produced a highly divided court without a majority opinion.
' In Horowitz v. United States, the Supreme Court explained that the sovereign acts doctrine distinguishes between the Government’s distinct roles as a private contractor and as a sovereign, providing that “the [Government] when sued as a contractor cannot be held liable for an obstruction to the performance of the particular contract resulting from its public and general acts as a sovereign.” 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736 (1925) (citations omitted). The Supreme Court did not address the doctrine again for the next seventy years. See Winstar, 518 U.S. at 923, 116 S.Ct. 2432 (Sealia, J., concurring-in-the-judgment) (stating that the sovereign acts doctrine “has apparently been applied by th[e Supreme] Court in only a single case, our 3-page opinion in Horowitz ..., decided in 1925”).
*948 In Winstar, Justice Souter authored a four- (and as to some portions, three-) Justice plurality opinion explaining that
[t]he sovereign acts doctrine ... balances the Government’s need for freedom to legislate with its obligation to honor its contracts by asking whether the sovereign act is properly attributable to the Government as a contractor. If the answer is no, the Government’s defense to liability depends on the answer to the further question, whether that act would otherwise release the Government from liability under ordinary principles of.contract law.
Id. at 896, 116 S.Ct. 2432 (plurality opinion) (footnote omitted). The Supreme Court has not revisited the sovereign acts doctrine since Winstar.
Lacking a definitive framework for applying the sovereign acts doctrine from existing Supreme Court precedent,[3] we have adopted the standard articulated by the plurality opinion in Winstar. See, e.g., Conner Bros., 550 F.3d at 1374 (stating that “this court has treated th[e plurality] opinion [in Winstar] as setting forth the core principles underlying the sovereign acts doctrine”). Pursuant to this framework, we evaluate the applicability of the sovereign acts doctrine using a two-factor test. Klamath Irrigation Dist. v. United States, 635 F.3d 505, 521 (Fed. Cir. 2011); Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1366 (Fed. Cir. 2009). First, we ask whether the governmental act “is properly attributable to the Government as contractor” or to the Government as sovereign, i.e., whether the act was designed “to relieve the Government of its contract duties” or was a “genuinely public and general act that only incidentally falls upon the contract.” Stockton, 583 F.3d at 1366 (internal quotation marks and citation omitted). Second, if the governmental act was a genuine public and general act, we ask “whether that act would otherwise release the Government from liability under ordinary principles of contract law.” Id. (internal quotation marks and citation omitted).
As explained above, the sovereign acts doctrine “is an affirmative defense that is an inherent part of every government contract.” Conner Bros., 550 F.3d at 1371 (citation omitted). As an affirmative defense, the Government, as defendant, bears the burden of establishing its entitlement to the sovereign acts defense. See Taylor, 553 U.S. at 907, 128 S.Ct. 2161. This burden applies to both factors of our two-factor framework. See Klamath, 635 F.3d at 521-22 (stating that “the [G]overnment has the burden of establishing” all elements of the sovereign acts defense). Determining whether the Government has met its burden is a legal conclusion based on underlying factual findings reviewed for substantial evidence. Conner Bros., 550 F.3d at 1378; see 41 U.S.C. § 7107(b)(2) (stating that the ASBCA’s “decision ... on a question of fact ... may not be set aside unless the decision is,” inter alia, “not supported by substantial evidence”).
B. The ASBCA Erred in Determining That the Sovereign Acts Doctrine Shielded the Government from Liability
The majority does not articulate or address the test concerning the sovereign acts doctrine. See generally Maj. Op. Because I believe both the ASBCA and this court are bound by the two-factor framework articulated above, I evaluate whether *949 the Government satisfied its burden as to each factor. In my opinion, it did not.
1. Substantial Evidence Supports the ASBCA’s Finding That the Government’s Acts Were Public and General Acts
The first factor, i.e., “whether the sovereign act is properly attributable to the Government as contractor,” is a subjective inquiry that examines the purpose of the governmental act. See, e.g., Yankee Atomic Elec. Co. v. United States, 112 F.3d 1569, 1573, 1575 (Fed. Cir. 1997) (stating that the parties’ “characterization [of the governmental act] frames the dispositive issue” and then evaluating whether the Government was “acting for the purpose of’ increasing prices charged to plaintiffs or solving problems related to uranium enrichment). We evaluate whether the act was “genuinely public and general” or “specifically directed at nullifying contract rights.” Stockton, 583 F.3d at 1366, 1367 (internal quotation marks and citation omitted); see Conner Bros., 550 F.3d at 1374 (similar). This inquiry can be informed by “whether the governmental act[ ] applies exclusively to the contractor or more broadly to include other parties not in a contractual relationship with the [GJovernment.” Conner Bros., 550 F.3d at 1375.
The dispute here concerns the Government’s decision to deny JTC’s employees access to Malmstrom. Although JTC had not encountered difficulty obtaining base access for its employees for prior contracts at Malmstrom, the Government began denying access to JTC employees with criminal records soon after JTC commenced performance of the contract at issue here, forcing JTC to hire a less experienced work force and increasing JTC’s cost of performance. J.A. 10-12. The ASBCA determined that the denial of access to JTC’s employees pursuant to three documents— the July 21, 2005 341st Space Wing Pamphlet 31-103 (“the 31-103 Pamphlet”) (J.A. 49-54), the July 26, 2005 341st Space Wing Instruction 31-101 (“the 31-101 Instruction”) (J.A. 55-76), and the October 2007 base access. memorandum (“the October 2007 Memorandum”) (J.A. 144^16)—con-stituted sovereign acts that shielded the Government from liability.[4] J.A. 22-24, 46. In support, the ASBCA noted that each of these documents applies “to all contractors and contractor personnel” and that “[t]here is no evidence that the policy was intended to nullify contract rights or that it provided to the [Government an economic advantage.” J.A. 24, 46; see J.A. 24-25 (evaluating the October 2007 Memorandum), 46-47 (evaluating the 31-103 Pamphlet and 31-101 Instruction).
Substantial evidence supports the ASBCA’s factual findings that the Government’s base access policy was a public and general act. It is true that there is ample evidence that the Government’s base access policies were subject to the “whim[s]” of the Wing Commander. J.A. 173; see J.A. 119 (stating that, over twenty years and dozens of projects, no JTC employees had been denied access prior to the contract at issue here), 153 (stating that the October 2007 Memorandum was a “large change”), 173 (“Good luck on this one, the policy appears to be undefined and pretty hard to defend.”). However, the relevant provisions in both the 31-103 Pamphlet and the 31-101 Instruction applied to “contractors” generally rather than specifically to Garco *950 or JTC, J.A. 51, 71; see J.A. 49 (setting forth the “policy for contractors who require[ ] entry” to Malmstrom), and the October 2007 Memorandum was addressed to “all contractors and contractor personnel,” J.A. 145 (emphasis added) (capitalization omitted). In addition, the record is replete with evidence indicating that the purpose of the base access policy was to ensure Malmstrom’s security. See, e.g., J.A. 284 (assessing the security impacts of three separate base access policies), 287 (“The purpose of [a National Crime Information Center] check i[s] to determine if there is any unfavorable information which may be detrimental to the security of the installation and preservation of good order and discipline on the installation.”). Finally, Garco has not identified any evidence either below or before this court that demonstrates that the 31-103 Pamphlet, the 31-101 Instruction, or the October 2007 Memorandum were directed at nullifying Gar-co’s or JTC’s contract rights. J.A. 24 (“There is no evidence that the policy [articulated in, inter alia, the 31-103 Pamphlet or 31-101 Instruction] was intended to nullify contract rights or that it provided to the [G]overnment an economic advantage”), 46 (“[Garco] presents no evidence contradicting [Major General] Finan’s declaration” as to the general purpose of the policy.); see generally Appellant’s Br. Thus, I agree with the ASBCA that the Government’s denial of access to Malm-strom was a public and general act.
2. Substantial Evidence Does Not Support the ASBCA’s Finding That the Government’s Acts Would Release It from Liability
Because I would find that substantial evidence supports the ASBCA’s determination that the Government’s denial of access to Malmstrom was a public and general act, I believe we must consider the second factor of the test, i.e., “whether that act would otherwise release the Government from liability under ordinary principles of contract law.” Stockton, 583 F.3d at 1366 (internal quotation marks and citation omitted). “This second [factor] turns on what is known in contract law as the ‘impossibility’ (sometimes ‘impracticability’) defense.” Id. To establish this defense, the Government must show that both full performance and substantial performance of the contract by the Government are “impossible.” Winstar, 518 U.S. at 905, 116 S.Ct. 2432; Carabetta Enters., Inc. v. United States, 482 F.3d 1360, 1365 (Fed. Cir. 2007). To make this showing, the Government must demonstrate that the event “rendering its performance impossible was an event contrary to the basic assumptions on which the parties agreed[ ] and ... that the language or circumstances do not indicate that the Government should be liable in any case.” Winstar, 518 U.S. at 904, 116 S.Ct. 2432; see. 12 No. 7 Nash & Cibinic Rep. ¶ 37 (“The determination of whether the nonoccu-rence of a specific sovereign act was a basic assumption of the contract will depend on the nature of the act and the circumstances surrounding the formation of the contract as well as its terms.”). If the Government does not carry its burden of showing impossibility, then its invocation of the sovereign acts defense fails. See Klamath, 635 F.3d at 522 (stating that the trial court “erred in holding that impossibility of performance is not a factor to be taken into account in considering the sovereign acts doctrine”).
The ASBCA neither made any findings as to impossibility nor referenced it at all, see J.A. 4-28, 31-34, 37-48, and nothing in the record indicates that the Government raised impossibility before the ASBCA. On appeal, the Government does not argue impossibility or provide evidentiary support for a finding of impossibility. See gen *951 erally Appellee’s Br. Indeed, neither “impossibility” nor its variants appear in the parties’ briefs or in the Joint Appendix. See generally Appellant’s Br.; Appellee’s Br.; Appellant’s Reply; J.A.
Where the ASBCA has failed to make factual findings as to impossibility in prior cases, we have reached three different results. In one instance, we vacated and remanded for additional fact finding “so that the [GJoverment [would] have the opportunity to carry [its] burden” of “establishing that performance of the various contracts at issue was impossible.” Klamath, 635 F.3d at 522 (footnote omitted). In another, we reversed and remanded the trial court’s application of the sovereign acts doctrine because “[t]he [G]overnment c[ould ]not avail itself of the impossibility defense to save it from this breach of contract claim.” City Line Joint Venture v. United States, 503 F.3d 1319, 1323 (Fed. Cir. 2007). Finally, in a third, we found that the plaintiff waived its arguments as to impossibility by failing to raise them before the ASBCA and affirmed the ASBCA’s application of the sovereign act defense. See Conner Bros., 550 F.3d at 1379.
I would find vacating and remanding to be the most appropriate result here.[5] See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (“[I]f the agency has not considered all relevant factors, ... the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.”). “Appellate courts do not make factual findings; they review them.” Mittal Steel Point Lisas Ltd. v. United States, 542 F.3d 867, 875 (Fed. Cir. 2008). Because the ASBCA did not make any factual findings as. to impossibility, I believe that it is inappropriate for us to do so in its stead. When both the ASBCA and the Government have failed to address one of the requisite factors, I believe the proper course is to vacate and remand “so that the [G]overment may have the opportunity to carry [its] burden” of “establishing that performance ... was impossible.” Klamath, 635 F.3d at 522 (footnote omitted).[6] Therefore, I would vacate the ASBCA’s opinions and remand for additional fact finding and explanation as to the impossibility factor’s applicability.[7]
*952 II. The Majority Misinterprets the ASBCA’s Conclusions
In addition to failing to consider the sovereign acts doctrine and progressing directly to the merits, the majority further errs by misinterpreting the ASBCA’s conclusions as being directed to the merits. The majority characterizes the ASBCA’s opinions as concerning a matter of regulatory interpretation, i.e., interpreting the base access policy at Malmstrom. Maj. Op. 949-52. I believe that this characterization is inaccurate.
In each of its three opinions, the ASBCA determined that the Government is not liable because the sovereign acts doctrine shields it from liability. In Garco I, the ASBCA determined that “[t]he implementation of the base access policy by the October 2007 [Memorandum was a sovereign act and the [Government is not liable in damages that may have been caused from October 2007 forward.” J.A. 46-47. In Garco II, the ASBCA determined that: “JTC presented ample credible evidence that it was harmed by the ... change in ... enforcement of [the] base access policy”; “JTC was not able to hire as experienced a work force as it had in the past”; and “this had an adverse impact on JTC’s labor hours and associated costs of performance.” J.A. 21, 21-22. On these bases, the ASBCA determined that the Government “could be liable for this damage unless it is protected by the sovereign act defense.” J.A. 22 (emphases added) (footnote omitted). Nonetheless, the ASBCA “extended] the sovereign act protection” from Garco I “back to the spring of 2007 or whenever the [Government] first started denying access” to JTC’s employees.
J.A. 27; see J.A. 28 (“Conclusion” section of the opinion stating in its entirety: “The [Government]’s enforcement of its base access policy commencing on or about the spring of 2007 was a sovereign act. To the extent JTC suffered as a result of the denial of access to its desired workers, the [Government] is not liable in monetary damages. The appeals are denied.” (emphases added)). Finally, in Garco III, the ASBCA denied Garco’s request for reconsideration of Garco II. J.A. 33. In so doing, the ASBCA stated in its penultimate sentence that “[w]e are unwilling to establish a new limit on the breadth of the sovereign act doctrine.” J.A. 33 (footnote omitted).
It is evident from each of these three decisions that the foundation of the ASBCA’s conclusions is that the sovereign acts doctrine shields the Government from monetary liability. Considered in the context of the ASBCA’s full opinions, the ASBCA’s discussion of the October 2007 Memorandum’s text and the parties’ other arguments is part of its analysis of whether the sovereign acts doctrine applies to the Government’s acts prior to October 2007. Indeed, the very section of Garco II that the majority cites (see Maj. Op. 949-50) is entitled “JTC’s Interpretation Argument/Scope of the Sovereign Acts,” and this section concludes by stating “[w]e have already held that th[e National Crime Information Center check] process is embodied in documents that qualify for sovereign act protection.” J.A. 24 (italics omitted), 25 (emphasis added).
Instead of acknowledging the context in which the ASBCA made its findings, the majority engages in an analysis of the *953 merits. The ASBCA did not decide against Garco on the merits. In fact, the ASBCA expressly acknowledged that the Government “could be liable” on the merits but for the sovereign acts doctrine. J.A. 22 (footnote omitted). The ASBCA determined that its sovereign acts analysis in Garco I applied equally to the Government’s acts both before and after the issuance of the October 2007 Memorandum. But, as explained above, the ASBCA’s analyses as to pre- and post-October 2007 governmental acts are equally deficient— neither addresses impossibility. It is unclear why the majority undertakes an analysis of merits when (1) it is unknown at this time whether the Government properly pleaded the affirmative defense and (2) the ASBCA did not consider the merits. See Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (“It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.”).
Finally, the majority’s analytic framework produces more questions than answers. For example, if the majority reached a different conclusion on the merits—i.e., if it found that the Government’s interpretation was erroneous and that the October 2007 Memorandum was a change in base access policy—Garco still could not recover damages. Recovery would require consideration and reversal of the ASBCA’s application of the sovereign acts doctrine, the very threshold issue that the majority bypasses here. See Horowitz, 267 U.S. at 461, 45 S.Ct. 344 (stating that the Government “cannot be held liable” when the sovereign acts doctrine applies (citations omitted)). Because the approach employed by the majority sows confusion and does not comport with what precedent demands, I decline to follow it.
III. Conclusion
The sovereign acts doctrine was the sole issue decided below. Yet, this threshold inquiry is entirely absent from the majority’s analysis, which focuses on the merits. Maj. Op. 949-52. However, affirming the ASBCA’s finding that the sovereign acts doctrine applies here precludes a finding that the Government is liable, rendering this analysis superfluous. I believe that the more appropriate course is to follow our clear precedent that the sovereign acts doctrine is an affirmative defense for which the Government bears the burden as to both factors. Because the Government did not satisfy its burden as to the second factor, I would vacate the ASBCA’s opinions and remand with instructions to consider the second factor.

. The sovereign acts doctrine is part of the principle of sovereign immunity, i.e., "[a] government’s immunity from being sued in its own courts without its consent.” Sovereign Immunity, Black's Law Dictionary (10th ed. 2014). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.” Dep’t of the Army v. Blue Fox, Inc., 525 U.S. 255, 260, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (internal quotation marks and citation omitted). The Contract Disputes Act of 1978, 41. U.S.C. §§ 7101-7109 (2012), is one such waiver of sovereign immunity, as it waives the [GJovernment’s sovereign immunity for claims brought by prime contractors in privity of contract with the Government. E.g., Winter v. FloorPro, Inc., 570 F.3d 1367, 1371-72 (Fed. Cir. 2009). The sovereign acts doctrine is an affirmative defense to contract claims brought pursuant to this waiver of sovereign immunity, permitting the Government to reassert its sovereign immunity despite entering into privity of contract with a contractor. See United States v. Winstar Corp., 518 U.S. 839, 860, 891-99, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (plurality opinion) (discussing the sovereign acts doctrine as a defense to a breach of contract claim).

. Appellant Garco Construction, Inc. ("Gar-co”) hired JTC as a subcontractor. J.A. 9.

. It does not appear that our sibling circuits have elaborated substantively on the guideposts provided by Winstar. See, e.g., Biodiversity Assocs. v. Cables, 357 F.3d 1152, 1172 n.10 (10th Cir. 2004) (discussing Winstar).

. Garco does not contest the ASBCA’s finding that denying base access pursuant to the October 2007 Memorandum was a sovereign act but, instead, contends that the Government is liable for the delays caused by the denial of base access to JTC prior to October 2007. Appellant’s Br. 11.

. "[W]e retain case-by-case discretion over whether to apply waiver....” Xianli Zhang v. United States, 640 F.3d 1358, 1371 (Fed. Cir. 2011) (citation and footnote omitted). Unlike the majority, Maj. Op. 942 n.2, I would decline to find waiver here for two reasons. First, the sovereign acts doctrine is grounded in the Government’s sovereign immunity, shielding the Government from liability for its actions as a sovereign. See supra n.1; Horowitz, 261 U.S. at 461, 45 S.Ct. 344. Therefore, I believe questions regarding the doctrine’s application cannot be waived. See, e.g., Meyer, 510 U.S. at 475, 114 S.Ct. 996; Brown-Crum-mer, 277 U.S. at 59, 48 S.Ct. 454. Second, the Government did not meet its burden of establishing impossibility in this case and, thus, did not meet its burden of establishing the sovereign act defense. Because the Government had not met its burden of establishing each factor of the sovereign act defense, Garco was under no obligation to rebut the Government's position on impossibility. See Klamath, 635 F.3d at 522 n.14.

. This course aligns with our practice in other administrative proceedings. See, e.g., In re NuVasive, Inc., 842 F.3d 1376, 1382, 1385 (Fed. Cir. 2016) (vacating and remanding so that an agency could fulfill its obligation to "make the necessary findings and have an adequate evi-dentiary basis for its findings” and to "articulate a satisfactory explanation for its action” (internal quotation marks and citations omitted)).

. Having determined that the sovereign acts doctrine shielded the Government from liability, the ASBCA additionally found that constructive acceleration “does not provide *952 [Garco] a path to entitlement to monetary damages resulting directly from the sovereign act of limiting access to” Malmstrom. J.A. 27; see J.A. 33 (affirming that conclusion on reconsideration). If the Government were to fail on remand to carry its burden as to impossibility of the sovereign acts doctrine, the ASBCA should reconsider Garco’s claim for constructive acceleration, as well as any other liability theory that the Government previously advanced before the ASBCA.