ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                    )
                                               )
APTIM Federal Services, LLC                    )    ASBCA No. 62982
                                               )
Under Contract No. FA9101-16-D-0006            )

APPEARANCES FOR THE APPELLANT:          Robert G. Barbour, Esq.
                                        Timothy E. Heffernan, Esq.
                                        Joseph Figueroa, Esq.
                                          Watt, Tieder, Hoffar & Fitzgerald L.L.P.
                                          McLean, VA

APPEARANCES FOR THE GOVERNMENT:         Jeffrey P. Hildebrant, Esq.
                                          Deputy Chief Trial Attorney
                                        Capt Jheremy Perkins, USAF
                                        Lt Col Matthew Ramage-White, USAF
                                          Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE THRASHER

APTIM Federal Services, LLC (APTIM or appellant) appeals from a denial of its claim for operational costs incurred for a construction contract during a roughly two-month period of time that the commander of Arnold Air Force Base, TN, closed the base in order to mitigate the spread of SARS-Cov-2 (COVID-19).  Appellant elected to proceed under Rule 12.3, Accelerated Procedure, and both parties agreed to waive a hearing and submit their cases on the written record pursuant to Board Rule 11.  Only entitlement is before us.  The Air Force (AF or government) invokes the sovereign act affirmative defense, and argues that since appellant did not dispute this defense in its initial brief after being made aware of it, it has waived any opposition.  While we are not convinced that appellant has waived its opposition, we find the base closure to be a sovereign act and deny the appeal.

FINDINGS OF FACT

1.  The government awarded Contract No. FA9101-16-D-0006 to CB&I Federal Services LLC, a predecessor in interest to APTIM Federal Services, LLC, located in Alexandria, VA (R4, tab 1 at 2, tab 5 at 1).  This contract was for design-build construction work at Arnold Engineering Development Complex at Arnold Air Force Base (AFB), TN, and contained Federal Acquisition Regulation (FAR) 52.242-14, SUSPENSION OF WORK (APR 1984), FAR 52.233-01, DISPUTES (MAY 2014) and FAR 52.243-04, CHANGES (JUN 2007) (R4, tab 1 at 3, 14, 35).

2. On July 15, 2019, the AF issued Task Order 96 for design-build work "for mounting the future AEDC High Pressure Air Bottle Farm" with a period of performance of "180-Calendar Days from issuance of Notice to Proceed" (R4, tab 7 at 1-2). This period of performance was extended through two bilateral modifications to June 25, 2020 (R4, tabs 9-10).

3. Due to the COVID-19 global pandemic, the base's Commander issued a memorandum on April 3, 2020, closing Arnold AFB to all non-operationally urgent personnel until further notice, effective April 6, 2020 (R4, tab 11 at 2). Appellant was not deemed operationally urgent, and thus was unable to access the base during this period (R4, tab 16). This restriction lasted until the Commander issued a second memorandum on June 3, 2020, which rescinded the previous memorandum as of June 15, 2020, while establishing other mitigation measures that allowed APTIM to enter the base and resume its work (R4, tab 22).

4. APTIM submitted a certified claim on June 23, 2020, for $99,076 for administrative costs it incurred during the roughly two months during which it was not able to access the job site, as well as a day-for-day extension, totaling 59 days (R4, tab 23). The government responded the following day, requesting more documentation justifying the cost, and stated "please be aware that the Sovereign Acts Doctrine establishes that actions taken by the United States in its sovereign capacity shield it from contractual liability for those acts" and that it "intends to invoke the Sovereign Acts defense with regard to any expenses related to actions taken in response to the COVID-19 pandemic" (R4, tab 24). However, the AF expressed willingness to extend the period of performance, which it ultimately did, to November 30, 2020 (*id.*, R4, tab 28 at 3).

5. Appellant provided supplemental information to substantiate its claim on May 5, 2021, reducing the amount requested to $96,033.87 (R4, tab 29). The government then issued a contracting officer's final decision, denying the monetary portion of the claim on June 24, 2021, recognizing that this was a firm-fixed price contract which "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss" (R4, tab 31 at 2) (emphasis omitted).

6. APTIM timely appealed the decision to the Board on July 16, 2021. APTIM's complaint largely reiterated the points it had made in its claim. In its answer, the AF asserted in its affirmative defenses section that any damages "were incurred as a result of [appellant's] adherence to mandates issued as sovereign acts implemented to protect the health and safety of the general public in the wake of the COVID-19 pandemic. Respondent's directions to its contractors were incidental to that public and sovereign act" (answer at 8).

DECISION

*The Parties' Contentions*

The government's initial brief focuses primarily on the sovereign acts affirmative defense, stating that the "restriction on access to Arnold AFB was a sovereign act" (gov't br. at 8). It looks to the two-part test from *United States v. Winstar Corp.*, 518 U.S. 839, 904 (1996), specifically that 1) the act be genuinely public and general, with only incidental impact to the contract, and 2) that this act rendered governmental performance impossible. The government argues that the April 3, 2020 base closure was done "in a manner which was public, general, and free from any self-interest as a party to Appellant's contract." (*Id*. at 9). As for the second prong, it argues that the impossibility "test applies when the Government, as a party to the contract, asserts that it was impossible to comply with its obligations under the contract due to the act or statute at issue" and thus does not apply in this circumstance (*id*. at 14). Appellant counter argues that the impossibility of performance prong is required for all invocations of the sovereign acts affirmative defense. Having failed to prove both prongs, and confident that it could not anyway, appellant argues the government must lose (app. reply br. at 3-8). It further points to the later rise in cases of the virus after the base was reopened, during which time other mitigation measures were in place, arguing that the government could have had the base open if it chose, thus governmental provision of base access was not impossible (*id*. at 10-16).

Appellant's initial brief focuses on proving the elements for recovery under the Suspension of Work clause, arguing that the base closure effectively suspended the work for an unreasonable amount of time (app. br. at 4-6). The government's reply brief recognizes that appellant's brief did not contest the sovereign acts affirmative defense raised in the AF's first response to the claim and in the AF's answer, disallowing the AF the opportunity to rebut any counter arguments appellant may raise. For this reason, the AF argues this is "an abandonment of any legitimate opposition to the Government's defense." (Gov't reply br. at 3) In the alternative, the AF argues it should be provided the opportunity to file a sur-reply (*id*. at 4).

*Discussion – Waiver and the Sovereign Acts Doctrine*

The government misapplies the law surrounding waiver of arguments. It is true that advancing an argument for the first time in reply briefs effectively waives it. *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration"); *Brooks Range Contract Servs., Inc. v. United States*, 101 Fed. Cl. 699, 708 (2011) ("[A] party waives issues not raised in its opening brief"). However, the government is trying to apply this principle to appellant's opposition to its argument, rather than a wholly new argument appellant may want to advance. The government points us to no case law

3

mandating that opposition to arguments in earlier filings come in the initial brief. On the contrary, the reply brief is the place for one party's opposition to the other party's arguments, and we are unaware of anything which requires appellant's opposition to the government's affirmative defense to be raised prior to that time. The situation at hand merely puts the government on equal footing with appellant regarding oppositional arguments. This is also the reason for our denying the AF's request for a sur-reply. Thus we deny the government's theory of waiver, and turn to the validity of its sovereign acts affirmative defense.

The sovereign acts doctrine "is an affirmative defense that is an inherent part of every government contract." *Conner Bros. Constr. Co., Inc. v. Geren*, 550 F.3d 1368, 1371 (Fed. Cir. 2008). "[T]he object of the sovereign acts defense is to place the Government as contractor on par with a private contractor in the same circumstances." *United States v. Winstar Corp.*, 518 U.S. 839, 904 (1996). Therefore, "[w]hatever acts the government may do, be they legislative or executive, so long as they be public and general, cannot be deemed specially to alter, modify, obstruct or violate the particular contracts into which it enters with private persons." *Horowitz v. United States*, 267 U.S. 458, 461 (1925) (quoting *Jones v. United States*, 1 Ct. Cl. 383, 384 (1865)). When pleading a sovereign acts defense, the Government bears the burden of proving that (1) the governmental action was public and general; and (2) the act must render performance of the contract impossible. *American General Trading & Contracting, WLL*, 12-1 BCA ¶ 34,905 at 171,637; *see also Conner Bros.*, 550 F.3d at 1379.

Appellant spends much of its reply brief discussing the government's failure to prove the second prong of the sovereign act doctrine, namely that its performance was impossible due to the act in question, and relies heavily on *Klamath Irr. Dist. v. United States*, 635 F.3d 505 (Fed. Cir. 2011) for the proposition that the government must actively prove impossibility alongside whether the government as sovereign had issued "a genuine public and general act that only incidentally fell upon the contracts at issue." *Id*. at 521. Essentially, since the AF declined to prove both prongs of the test, appellant argues it must automatically lose access to this affirmative defense.

This is too technical a reading, and confuses the government's argument in *Klamath* with the lower court's opinion. In *Klamath*, the Federal Circuit remanded the lower court's opinion for the government to prove impossibility because it had not yet done so. *Id*. at 522. If, as appellant argues, failure to prove this prong of the sovereign acts defense were conclusive, regardless of the facts at issue, the opinion would have been reversed instead. While it is true that the government must prove impossibility of performance, and the government did have the contractual obligation to provide site access, or at least to not interfere with APTIM's work, we are able to see that the "impracticability of the performance [was] plain: the government cannot allow [appellant] to proceed [with its contractual work] . . . without violating the law," as in *Century Expl. New Orleans, LLC v. United States*, 110 Fed. Cl. 148, 181 (2013).

4

In discussing the AF's ability to prove impossibility of performance, appellant repeatedly conflates the government as sovereign and the government as contracting party, the separation of which is the central concept of the sovereign acts defense. "The two characters which the government possesses as a contractor and as a sovereign cannot be thus fused; nor can the United States while sued in the one character be made liable in damages for their acts done in the other." *Jones v. United States*, 1. Ct. Cl. 383, 384 (1865). Further, the "government is not, like an individual, cognizant of its own transactions. Those transactions are numberless, dependent on unnumbered officers, and scattered not only through every portion of its wide territory, but through every quarter of the world." *Id.* at 388. "The sovereign acts doctrine thus balances the Government's need for freedom to legislate with its obligation to honor its contracts by asking whether the sovereign act is properly attributable to the Government as contractor." *Winstar*, 518 U.S. at 896. In this instance, the Arnold Air Force Base commander is the one acting in a sovereign capacity, using his executive authority to close the base to all non-essential personnel to mitigate an outbreak of a global pandemic.[*] Such closure was neither "directed to relieving the government of its contractual obligations" nor did it "appl[y] exclusively to the contractor," two important factors in *Connor Bros.*, 550 F.3d at 1374-75. As was also held in that case, we hold that in this appeal, "any effect [of the sovereign act] on [the contractor] was incidental to a broader governmental objective relating to national security." *Id.* at 1375.

As for impossibility, "[w]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." *Winstar*, 518 U.S. at 904 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981)). This requirement has been reformulated into the following elements by the Federal Circuit as follows: "(i) a supervening event made performance impracticable; (ii) the non-occurrence of the event was a basic assumption upon which the contract was based; (iii) the occurrence of the event was not [the invoking party's] fault; and (iv) [the invoking party] did not assume the risk of occurrence." *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1294 (Fed. Cir. 2002). The facts presented by the government satisfy all four of these elements. The April memorandum provides the supervening event, disallowing base access, the free availability of which was a basic assumption underlying the contract for construction work on the base by a contractor who was not permanently located on the base (findings 1, 3). Issuance of this memorandum, despite appellant's best attempts to argue otherwise, remains the fault of the government as sovereign (finding 3), and not the government as contracting party. Finally, this was a

---

[*] Appellant's data about daily cases in the region over subsequent months substitutes its retroactive knowledge for the situational judgment of the sovereign, which is, at a minimum, an inquiry we decline to undertake. (App. reply br. at 8-16).

firm-fixed price contract (findings 1, 5), under which FAR 16.202-1 "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss," thus appellant assumed the risk of such changes. *Lakeshore Eng'g Servs. v. United States*, 748 F.3d 1341, 1347 (Fed. Cir. 2014). We have been directed to no provision stating otherwise.

We find *Connor Bros.* to be close to the facts at issue, and confirmatory of the result. In that case, Connor Bros. sought compensation for being barred from a military base for 41 days following the September 11, 2001 terrorist attacks. This included a period during which the exclusionary order was modified to keep Connor Bros., the only affected contractor, from their work site after other contractors had returned, in order to facilitate "sensitive deployment activities" at that site. Like appellant here, Connor Bros. was granted a no-cost delay to finish the project, but appealed a denial of its claim for costs related to the delay under the Changes and Suspension of Work clauses. *Connor Bros.*, 550 F.3d at 1370-71. The Federal Circuit found that the actions were not specifically directed at nullifying Connor Bros.' contract rights but rather at larger national security interests, and the original order restricting access was broadly and publicly applicable. *Id*. at 1375. Singling that company out via the subsequent order, which targeted specifically it, made no difference to the result, as the purpose was still for the same original national security reasons. Here, appellant was excluded from Arnold Air Force Base equally along with many other contractors by act of the base commander, in pursuit of a larger public health danger, which itself threatened a national security impact (finding 3). This exclusion made performance of each party's contractual obligations impossible during the time period at issue. Both prongs of the sovereign act defense being present, we conclude that this defense removed the AF's liability for the work stoppage which APTIM suffered.

CONCLUSION

For the reasons stated above, the appeal is denied.

Dated: April 28, 2022

_____
JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

6

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62982, Appeal of APTIM Federal Services, LLC, rendered in conformance with the Board's Charter.

Dated: April 28, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals